**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:17-cv-00096-MR**
**[CRIMINAL CASE NO. 1:14-cr-00026-MR-DLH-1]**

| | | |
|---|---|---|
| **PATRICK RONALD SILVA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Petitioner Patrick Ronald

Silva's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody [CV Doc. 1]; the Government's

Motion to Seal [Doc. 5]; and the Petitioner's Motion for Leave to Propound

Discovery [CV Doc. 9].[1]  The Petitioner is represented by attorney Randolph

Marshall Lee.

_____

[1] Because this Memorandum and Order must reference documents contained on the docket in both Petitioner's civil case and his criminal case, the Court will cite to documents from the Petitioner's civil case with the prefix "CV."  The Court will cite to documents from the Petitioner's criminal case with the prefix "CR."

## I.    BACKGROUND

The Petitioner Patrick Ronald Silva was engaged in trading child pornography on a popular international photo sharing website.  [CR Doc. 52: PSR at ¶¶ 13(1), 14].  Some of the files he traded contained sexually explicit depictions of minors subjected to sadomasochistic treatment. [Id. at ¶ 18].  At the same time, the Petitioner was also engaged in an intimate sexual relationship with his co-defendant Tabatha Black ("Black"), who was married and had a seven-year-old daughter ("child victim" or "C.V.").  [Id. at ¶ 13(1), (4)].  During the course of their relationship, the Petitioner asked Black to take sexually explicit photographs of her daughter and send them to him for his sexual gratification, and Black complied.  [Id. at ¶¶ 13(4), 36]. At the time of his arrest, the Petitioner had in his possession multiple pornographic images of C.V., as well as several videos.  [Id. at ¶¶ 37-38].  Additionally, the investigation revealed that the Petitioner had sent videos and images that Black took of C.V. to other people.  [Id. at ¶ 5(b)(ii), (d)(i)].

On April 1, 2014, the Petitioner and Black were charged in a Bill of Indictment, with multiple child pornography offenses.  [CR Doc. 1: Indictment].  Specifically, the Petitioner and Black were both charged in Count One with sexual exploitation of a minor, in violation of 18 U.S.C. § 2251(a).  [Id.].  Additionally, the Petitioner was charged with sexual exploitation of a minor,

and aiding and abetting the same, in violation of 18 U.S.C. §§ 2251(a), 2251(e), and 2 (Count Two); transportation of child pornography, and aiding and abetting the same, in violation of 18 U.S.C. §§ 2252A(a)(1) and 2 (Count Four); receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) (Count Five); and possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Seven).  [Id.].

On June 6, 2014, the Petitioner entered into a Plea Agreement in which he agreed to plead guilty to Count One as set forth in the Bill of Indictment, in exchange for which the Government agreed to dismiss Counts Two, Four, Five, and Seven.  [CR Doc. 32: Plea Agreement].  In the Plea Agreement, the parties made a series of joint recommendations to the Court, including the following:

    a.    That pursuant to U.S.S.G. § 2G2.1(a), [Petitioner's] base offense level is 32.

    b.    That the offense involved a minor who had not attained the age of twelve years.

    c.    [That] [t]he offense involved distribution.

[Id. at ¶ 7(a)-(c)].  The Petitioner acknowledged in the Plea Agreement that he understood that the Court would consider the Guidelines as advisory; that the Court had not yet determined the sentence and that any estimate of the likely sentence was "a prediction rather than a promise"; that the Court had

the discretion to impose any sentence up to the statutory maximum; and that the Court would not be bound by any recommendations or agreements made by the Government. [Id. at ¶ 6]. The Petitioner further agreed in the Plea Agreement, "in exchange for the concessions made by the United States," to waive his right to appeal his conviction or his sentence, except on the bases of ineffective assistance of counsel or prosecutorial misconduct. [Id. at ¶ 19].

On June 12, 2014, the Petitioner appeared before the Honorable Dennis L. Howell, United States Magistrate Judge, for a Rule 11 hearing. The Petitioner was placed under oath and was asked a series of questions by the Magistrate Judge, who recorded his responses. [CR Doc. 34: Rule 11 Inquiry]. During this colloquy, the Petitioner averred that he could hear and understand the Magistrate Judge's questions and that his mind was clear. [Id. at 1-2]. The Magistrate Judge advised the Petitioner of the essential elements of the offense to which he was pleading guilty, as well as the minimum and maximum penalties. [Id. at 2-3]. In response to the Magistrate Judge's questions, the Petitioner affirmatively stated that he understood that the Court would not be bound by the Sentencing Guidelines in sentencing him and could impose a sentence greater or less than the sentence as provided for by the Guidelines. [Id. at 5]. The Petitioner further stated that he understood that if the imposed sentence was more severe than expected

or the Court did not accept the Government's sentencing recommendation, he would still be bound by his guilty plea and would have no right to withdraw his plea. [Id. at 5-6].

The Petitioner further admitted that he was guilty of Count One as set forth in the Bill of Indictment; that his guilty plea was voluntary; that he understood and agreed with the terms of the written Plea Agreement; and that no promises were made to him other than the promises contained in that written agreement. [Id. at 7-8]. The Petitioner also affirmed that he was waiving his right to appeal. [Id. at 8]. Based upon the representations and answers given by the Petitioner, the Magistrate Judge found that his guilty plea was knowingly and voluntarily made and that the Petitioner understood the charges, potential penalties, and consequences of that plea. [Id. at 9].

In advance of the Petitioner's sentencing, the Probation Office prepared a Presentence Report ("PSR"). [CR Doc. 52: PSR]. The probation officer recommended a total offense level of 37, based upon a base offense level of 32, along with an increase of four levels due to the fact that the child victim was under the age of twelve years, U.S.S.G. § 2G2.1(b)(1)(A); an increase of two levels based on the fact that the offense involved the commission of a sexual act or sexual contact, U.S.S.G. § 2G2.1(b)(2)(A); an increase of two additional levels due to the fact that the offense involved distribution, U.S.S.G.

§ 2G2.1(b)(3); and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(b). [Id. at ¶¶ 47-49, ¶¶ 55-57]. Based on a total offense level of 37, and a criminal history category of III, the probation officer recommended an advisory Guidelines range of 262 to 327 months' imprisonment. [Id. at ¶¶ 57, 68, 99].

The Court held a sentencing hearing on May 28, 2015. The Court first confirmed that all of the Petitioner's responses to the Magistrate Judge's questions in the prior Rule 11 proceedings were true and correct. [CR Doc. 69: Silva Sent. Tr. at 4]. The Petitioner's counsel confirmed that he was satisfied that the Petitioner understood all of the questions that were asked of him in the Rule 11 proceedings. [Id. at 4-5]. The Petitioner confirmed that he was pleading guilty because he did in fact commit the crime charged. [Id. at 5]. He further confirmed that he was pleading guilty voluntarily and not as a result of any threats, force or promises other than those promise set forth in the Plea Agreement. [Id.].

Noting that the parties had stipulated to various sentencing recommendations in the Plea Agreement, the Court confirmed that the Petitioner understood that the Court was "not required to accept those facts or those factors simply because both sides have agreed" and that if the Court

6

"decline[d] to accept any of those facts or factors in [its] sentencing decision, [the Petitioner would] not have the right to withdraw [his] plea."  [Id. at 5-6].

The Petitioner then stipulated that there was a factual basis to support his guilty plea and that the Court could accept the facts as set forth in the final PSR as establishing such factual basis.  [Id. at 6-7].  Based upon the representations made to the Court and the answers given by the Petitioner, the Court accepted the Petitioner's guilty plea.  [Id. at 7].

During the sentencing hearing, the Petitioner's counsel noted the findings in the PSR that the Petitioner himself was the victim of sexual abuse at a very early age, that the abuse had occurred for a seven- to eight-year period, and that the Petitioner had never been treated or evaluated for such abuse.  [Id. at 9].  Counsel also argued that this case was "strikingly similar" to another exploitation case that had recently been before the Court, wherein a mother was accused of sending pornographic images of her own child to the mother's co-defendant with whom the mother was having an affair. Counsel argued that the mother in that case "was viewed to be far more culpable in her conduct than that of the male she was having an extramarital relationship with," and thus the mother received a much harsher sentence than the sentence received by her male co-defendant.  [Id. at 11].  In contrast to that case, counsel argued that in prosecuting the Petitioner and Black, the

Government had chosen to show favor to Black, despite the fact that her conduct was, in counsel's words, "equally as reprehensible and certainly more culpable than the actions of [the Petitioner]." [Id. at 14]. Noting that this Court had sentenced Black to a term of 210 months' imprisonment just a few weeks earlier, the Petitioner's counsel argued that the Court should impose a sentence that was equal to or less than the sentence imposed upon Black.[2] [Id. at 14-16].

The Government argued that the Court should impose a sentence at the low end of the Guidelines range. In so arguing, the Government distinguished the other exploitation case cited by the Petitioner's counsel, noting that the other case involved a single occasion of solicitation without any distribution, whereas the Petitioner made a series of solicitations over a long period of time and distributed the solicited pornographic images over the internet. [Id. at 17-21]. The Government noted that the Petitioner's criminal history was more extensive than the typical defendant's in an exploitation case. [Id. at 21]. The Government further noted that other producers of child

---

[2] At Black's sentencing, the Government moved to reduce her sentence by two levels, based on her substantial assistance. [CR Doc. 78: Black Sent. Tr. at 13]. The Government did not seek a larger reduction because it believed that Black had not been completely forthcoming regarding her contact offense with C.V. [Id. at 27-28, 30]. This Court granted the motion. [Id. at 13]. Black, who had a criminal history category of I, was sentenced to 210 months of imprisonment. [Id. at 12-13, 34].

pornography had been sentenced to between 262 and 480 months' imprisonment. [Id. at 22-23].

After hearing from both parties as to the appropriate sentence, the Court imposed a sentence of 262 months' imprisonment, the low end of the Guidelines Range. [Id. at 25]. In explaining its reasoning for the sentence imposed, the Court noted the presence of several aggravating factors, including the fact that the Petitioner solicited and induced the creation of the pornographic images and solicited and induced the mother to participate in the creation of these images and in the actual molestation of her child. The Court also noted, however, that it was allowing for "some degree of reduction" in light of the Petitioner's own history of sexual abuse and the Petitioner's cooperation with law enforcement at an early stage of the investigation. [Id. at 27-28]. The Court entered its Judgment on June 2, 2015. [CR Doc. 59: Judgment].

The Petitioner filed a timely notice of appeal [CR Doc. 61: Notice of Appeal], arguing that his trial counsel was ineffective at sentencing in failing to present certain arguments and in failing to file a motion for a downward variance or departure. On April 6, 2016, the Fourth Circuit Court of Appeals dismissed the Petitioner's appeal, finding that the Petitioner's claims were not reviewable on direct appeal. [CR Doc. 73: Fourth Circuit Opinion].

On April 3, 2017, the Petitioner, through retained counsel, filed the present motion to vacate pursuant to 28 U.S.C. § 2255. [CV Doc. 1]. In his motion, the Petitioner asserts the following grounds for relief: (1) that trial counsel was ineffective in advising him to plead pursuant to the Plea Agreement (Claim 1); (2) that trial counsel was ineffective in failing to seek suppression of the Petitioner's statements to law enforcement (Claim 2); (3) that trial counsel refused to explore and investigate the Petitioner's claim that the child's underwear found in his residence during the search came from an adult not connected to this case (Claim 3); (4) that trial counsel was ineffective in resisting the Petitioner's desire to move to withdraw his guilty plea (Claim 4); and (5) that trial counsel was ineffective at sentencing by failing to seek the appointment of a forensic psychologist to address the impact of the Petitioner's childhood sexual abuse and in failing to advance arguments regarding the need to avoid sentencing disparities (Claim 5). [CV Doc. 1]. In the affidavit supporting his Motion to Vacate, the Petitioner states: "Had I known [at the time of my plea] what I know now, I would have pled not guilty and sought a plea to the offense of which I was guilty." [CV Doc. 1: Silva Aff. at ¶ 25]. He further asks the Court to "strike [his] guilty plea and plea agreement" so that he may assert his defenses and "seek a sentence

appropriate to my criminal history, to my level of guilt and consistent with the factors in Section 3553(a)."  [Id. at ¶ 26].

## II.    STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief.  After having considered the record in this matter, the Court finds that this matter can be resolved without an evidentiary hearing.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

### A.    Ineffective Assistance of Counsel Claims

In order to challenge a conviction based on the ineffective assistance of counsel, a petitioner has the burden of establishing that: (1) defense counsel's performance was deficient, in that counsel's "representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms," and (2) the petitioner suffered prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

Courts must apply a "highly deferential" standard in reviewing an attorney's performance and "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. In order to establish prejudice, the petitioner must demonstrate there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. It is not sufficient to show the mere "'possibility of prejudice.'" Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)). In considering the prejudice prong, a court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). If a petitioner fails to conclusively demonstrate prejudice, the Court need not consider the performance prong. United States v. Terry, 366 F.3d 312, 315 (4th Cir. 2004).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." United States v. Swaby, 855 F.3d 233, 241 (4th Cir. 2017) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have

pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

A defendant's knowing and voluntary waiver of the right to collaterally attack his conviction and sentence is enforceable. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). In evaluating claims made in a motion to vacate, statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977); see also Lemaster, 403 F.3d at 221-22 ("Thus, in the absence extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements. Otherwise, a primary virtue of Rule 11 colloquies would be eliminated....").

### 1.    Claims 1, 2, and 3

In his first three claims, the Petitioner contends that his counsel conducted an inadequate investigation prior to the Petitioner pleading guilty; that counsel was ineffective in recommending that the Petitioner plead guilty

pursuant to the Plea Agreement; and that counsel provided ineffective assistance by failing to file a motion to suppress.  [CV Doc. 1 at 5-8].

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea."  United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010).  Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea.  See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983).  Because the Petitioner's contentions in support of these three claims all relate to counsel's pre-plea conduct, he waived the right to challenge these actions by pleading guilty. See Moussaoui, 591 F.3d at 279.

Even if the Petitioner had not waived these claims, they are without merit.  The Petitioner first contends that counsel provided ineffective assistance by advising him to plead guilty without conducting an adequate investigation into the Government's discovery and his potential defenses. Specifically, he contends that counsel did not investigate the Petitioner's claim that the child-sized underwear found at his residence belonged to an

adult, not the child victim. The Petitioner had admitted, however, that the underwear belonged to the C.V. and also had told officers that he bought the now stained underwear to masturbate on. Under these circumstances, counsel's decision to not test the underwear for DNA was strategic and objectively reasonable. Accordingly, there was no deficient performance. See Strickland, 466 U.S. at 690. Additionally, Silva cannot show prejudice because, regardless of the ownership of the underwear, the damaging emails, pictures, videos, and statements he made, along with those made by Black, provided overwhelming evidence of his guilt. See United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

In his second claim, the Petitioner asserts that counsel provided ineffective assistance by failing to file a motion to suppress the statements the Petitioner made to officers while his residence was being searched. To establish ineffective assistance based on counsel's failure to file a motion to suppress, a defendant must show both deficient performance and prejudice. There is no deficient performance where counsel's determination not to litigate a motion to suppress is reasonable. See Walker v. United States, No. RWT-14-0526, 2015 WL 4638069, at *2 (D. Md. July 31, 2015). Further, a petitioner cannot establish prejudice unless he proves that the "Fourth Amendment claim is meritorious and that there is a reasonable probability

that the verdict would have been different absent the excludable evidence…."
Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

Here, the Petitioner offers no evidence that he was in custody when he spoke to investigators at his residence. See Rule 2(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts (requiring the motion to state the facts supporting each ground for relief). The Petitioner's subjective assertion in his Affidavit that he "considered" himself to be in custody [CV Doc. 1: Silva Aff. at ¶ 1] is insufficient to establish a Fourth Amendment violation. See Stansbury v. California, 511 U.S. 318, 323 (1994). The Petitioner also does not argue that a motion to suppress would have been successful; he merely contends that such a motion would have been "arguable." The Petitioner has identified nothing, however, that overcomes the presumption that his counsel exercised reasonable professional judgment in determining that a motion to suppress was not warranted. See Strickland, 466 U.S. at 690. Accordingly, he cannot show that counsel's decision not to file a motion to suppress was objectively unreasonable.

In his third claim, the Petitioner argues that counsel was ineffective in advising him to plead to the Plea Agreement. The Petitioner asserts that counsel's advice was not based on an analysis of the evidence and that he was not guilty of the offense to which he pleaded guilty because he was

16

merely engaged in "roleplaying" with Black, and, although he and Black exchanged "objectionable photographs or videos," he had not created those images. [CV Doc. 1 at 5; Silva Aff. at ¶¶ 10, 12, 19, 25].

The Petitioner was convicted of aiding and abetting Black in enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. <u>See</u> 18 U.S.C. § 2251(a). The fact that the Petitioner did not take the pictures and videos is not a defense to the charge of aiding and abetting. <u>See</u> <u>United States v. Caudill</u>, 709 F.3d 444, 446-47 (5th Cir. 2013) (rejecting defendant's argument that none of his communications were passed along to the minor victim and holding that "a defendant who communicates solely with an adult intermediary" can be guilty of enticement); <u>Demink v. United States</u>, No. 12-cv-13456, 2015 WL 4429441, at *4 (E.D. Mich. 2015) (holding communication with adult guardians of minor victims was sufficient to support conviction for inducing or enticing an individual to engage in sexual activity). Whoever "aids, abets, counsels, commands, induces or procures" the commission of an offense against the United States, or "willfully causes an act to be done which if performed directly by him" would be an offense, "is punishable as a principal." 18 U.S.C. § 2. Thus, the Petitioner was guilty because he aided and abetted Black in creating the images. Black stated that the Petitioner requested that

she take the sexually explicit photographs and told investigators that she did so because he was coercing and threatening her. [CR Doc. 52: PSR at ¶¶ 13(4), 36]. This conduct supported the Petitioner's guilt of the offense, so he cannot show deficient performance or prejudice based on counsel's advice to plead guilty.

In light of the evidence against him, Silva cannot show that a decision to proceed to trial would have been reasonable. See Fugit, 703 F.3d at 260; United States v. Santiago, 632 F. App'x 769, 774 (4th Cir. 2015) (holding "when the Government's case is strong, a defendant faces a nearly insurmountable obstacle to showing that it would have been rational to go to trial"). Had the Petitioner not pleaded guilty, he would have faced four additional charges, and he would have lost the three-level reduction for acceptance of responsibility, all of which would have resulted in a much higher sentence in the event of his conviction.

For all these reasons, the Court concludes that the Petitioner has waived the ineffective assistance claims as asserted in Claims 1, 2, and 3. Even if the Petitioner had not waived such claims, the Court finds that they are baseless. Accordingly, Claims 1, 2, and 3 are dismissed.

## B.    Claim 4

Next, the Petitioner contends that counsel provided ineffective assistance by failing to move to withdraw his guilty plea.

A court considers six factors in determining whether there is a fair and just reason for granting a motion to withdraw a guilty plea made prior to sentencing:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

United States v. Moore, 931 F.2d 245, 248 (4th Cir. 1991).

Here, the Petitioner asserts that counsel resisted the Petitioner's desire to move to withdraw his guilty plea; that Black's statement was the only evidence supporting his guilty plea; and that even the Government had doubts as to the information that Black provided. [CV Doc. 1 at 9].  In his affidavit, the Petitioner contends that he informed his attorney of his "mental state" and that his "ability to resist and advocate were significantly harmed" due to the animosity and bad treatment that he was receiving from the small

community in which he resided. [CV Doc. 1: Silva Aff. at ¶ 17]. He argues that after he pleaded guilty, he learned that Black's credibility was questionable and he told counsel that he wanted to withdraw his plea. [Id. at ¶¶ 22, 24]. The Petitioner's mother also provided an affidavit, asserting that the Petitioner told her "that he felt forced into accepting the plea and the plea agreement." [CV Doc. 1: Dufur Aff. at ¶ 2].

The Petitioner cannot show that counsel's performance in this regard was deficient. The Petitioner's assertion that he wanted to withdraw his guilty plea based on the questionability of Black's credibility would not have established a fair and just reason for withdrawing his plea. The Petitioner was in the best position to assess Black's information and credibility, even prior to his plea, because he knew what his interactions with her were when committing the offense. Additionally, the Petitioner bases the issue of credibility on what occurred during Black's sentencing hearing, which took place eight months *after* he pleaded guilty. [See Docket Entries of June 12, 2014 and Feb. 12, 2015]. The transcript of that proceeding shows that the question as to Black's credibility related to whether she was completely forthcoming regarding her own conduct in committing a contact offense, not whether she was credible as to the Petitioner's conduct. [See CR Doc. 78:

Black Sent. Tr. at 27-28, 30]. Accordingly, this would not have supported a motion to withdraw the plea.

Similarly, the Petitioner's contention that his ability to resist pleading guilty was lessened by the bad treatment that he received in his small community would not have overcome the statements that he made under oath during the plea hearing that his plea was voluntary and not the result of coercion or threats, nor his reaffirmation of this representation at sentencing. In the absence of a fair and just reason for moving to withdraw the plea, counsel's performance was not deficient. See United States v. Craig, 985 F.2d 175, 179-80 (4th Cir. 1993) (holding district court did not abuse its discretion in denying motion to withdraw a plea based on claimed ineffective assistance of counsel, including assertion that counsel coerced defendant to plead guilty); Moore, 931 F.2d at 248.

Finally, the Petitioner cannot show prejudice arising from counsel's performance. By pleading guilty, the Petitioner had four other charges dismissed, and he received a three-level reduction for acceptance of responsibility, which significantly lowered his sentence. See Lee, 137 S. Ct. at 1967 (holding a defendant facing long odds will rarely be able to show prejudice from accepting a guilty plea and that "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he

would have pleaded but for his attorney's deficiencies"). For all these reasons, this claim is also denied.

## C.    Claim 5

In his final claim, the Petitioner asserts that he received ineffective assistance at sentencing because counsel failed to call a forensic psychologist to address the impact of the Petitioner having been the victim of child molestation.  He further contends that counsel was ineffective by not arguing the need to avoid unwarranted sentencing disparities or the need to "recognize developed sentencing jurisprudence" in this type of case.  [CV Doc. 1 at 15].

To establish ineffective assistance of counsel at sentencing, a petitioner must show that but for counsel's deficient performance, there is a reasonable probability that he would have received a lower sentence. See Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999).

Here, the Petitioner cannot show deficient performance because counsel argued that the Petitioner had suffered abuse as a child and argued about the need to avoid unwarranted sentencing disparities, citing Black's sentence, as well as the sentence imposed in another case within the district. The Petitioner does not identify any "developed sentencing jurisprudence" that counsel should have cited, so this conclusory assertion is dismissed.

See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) ("vague and conclusory allegations in a § 2255 petition may be disposed of without further investigation by the District Court") (citation omitted).

Moreover, counsel did not act in an objectively unreasonable fashion by citing the Petitioner's prior abuse without calling for testimony from a forensic psychologist. Evidence of psychological impairments can also establish aggravating factors, such as a propensity towards recidivism, and counsel's strategic decision in this regard is entitled to deference. See Royal, 188 F.3d at 249 (rejecting ineffective assistance claim based on counsel's failure to present certain mitigating evidence and recognizing that "reliance on evidence of psychological impairments or personal history as mitigating factors at sentencing can be a 'double-edged sword'") (citation omitted); Phillips v. United States, No. 5:12-cv-00236-F-1, 2016 WL 1047008, at *4 (E.D.N.C. Mar. 10, 2016) (holding that counsel's decision not to retain an independent medical expert was "the type of strategic choice by counsel that may not be second-guessed on habeas review"), appeal dismissed, 672 F. App'x 309 (4th Cir. 2017). Thus, the Petitioner has failed to demonstrate deficient performance.

Further, the Petitioner cannot show prejudice. This Court specifically stated that it reduced the Petitioner's sentence based on his history of abuse,

finding it to be a mitigating factor. The Court, however, also found aggravating factors in this case, as well as factors that distinguished it from the other defendants cited by counsel. The factor at issue has been fully accounted for. Thus, the Petitioner has not met his burden to show constitutionally deficient conduct, or that he would have received a more lenient sentence. Accordingly, this claim of ineffective assistance also must be denied.

### D. Government's Motion to Seal

The Government moves to seal its Response to Petitioner's Motion to Vacate in order to prevent the disclosure of information previously filed under seal, namely, information from the sealed factual basis and sealed presentence report, including information relating to the minor victim of the offense.

The press and the public have, under both the First Amendment and the common law, a qualified right of access to judicial documents and records filed in civil and criminal proceedings. Doe v. Public Citizen, 749 F.3d 246, 265 (4th Cir. 2014). "The common-law presumptive right of access extends to all judicial documents and records, and the presumption can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'" Id. at 265-66 (quoting in part Rushford v. New Yorker

Magazine, Inc., 846 F.2d 249, 253 (4th Cir. 1988)).  The First Amendment right of access "may be restricted only if closure is 'necessitated by a compelling government interest' and the denial of access is 'narrowly tailored to serve that interest.'"  Id. at 266 (quoting in part In re Wash. Post Co., 807 F.2d 383, 390 (4th Cir. 1986)).

When presented with a motion to seal, the law of this Circuit requires this Court to: "(1) provide public notice of the request to seal and allow interested parties a reasonable opportunity to object, (2) consider less drastic alternatives to sealing the documents, and (3) if the sealing motion is granted, provide specific reasons and factual findings supporting its decision to seal the documents and for rejecting the alternatives."  Ashcraft v. Conoco, Inc., 218 F.3d 288, 302 (4th Cir. 2000).

In the present case, the public has been provided with adequate notice and an opportunity to object to the Government's motion.  Further, the movant has demonstrated that the Response contains certain information from the sealed Factual Basis and PSR concerning the minor victim, and that the public's right of access to such information is substantially outweighed by the competing interest in protecting the details of such information, particularly regarding a child.  Finally, having considered less drastic alternatives to sealing the documents, the Court concludes that sealing of the Government's

Response is necessary to protect the victim's minor privacy interests.  For all these reasons, the Government's Motion to Seal is granted.

### E.    Petitioner's Motion for Discovery

The Petitioner moves the Court for discovery in this § 2255 proceeding. [CV Doc. 9].  To obtain leave to serve discovery requests, the Petitioner has the burden to show "good cause" under Rule 6(a) of the Rules Governing Section 2255 Proceedings.  See Bracy v. Gramley, 520 U.S. 899, 908 (1997). "Good cause" does not exist where a petitioner requests discovery on a claim that fails as a matter of law. See Thomas v. Taylor, 170 F.3d 466, 474 (4th Cir. 1999). Because the Court has concluded that the Petitioner's claims all fail as a matter of law, his request for discovery must be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Petitioner's motion to vacate is denied and dismissed.    The Court further finds that Petitioner has not made a substantial showing of a denial of a constitutional right.  See generally 28 U.S.C. § 2253(c)(2); see also Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong") (citing Slack v. McDaniel, 529 U.S. 473, 484-85 (2000)).  The Petitioner has failed to demonstrate both that this

Court's dispositive procedural rulings are debatable, and that the motion to vacate states a debatable claim of the denial of a constitutional right. <u>Slack v. McDaniel</u>, 529 U.S. 473, 484-85 (2000). As a result, the Court declines to issue a certificate of appealability. <u>See</u> Rule 11(a), Rules Governing Section 2255 Proceedings for the United States District Courts, 28 U.S.C. § 2255.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that:

(1)     The Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody [CV Doc. 1] is **DENIED** and **DISMISSED**;

(2)     The Government's Motion to Seal [CV Doc. 5] is **GRANTED**, and the Government's Response [CV Doc. 4] shall remain under seal until further Order of this Court; and

(3)     The Petitioner's Motion for Leave to Propound Discovery [CV Doc. 9] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

**IT IS SO ORDERED.**          Signed: August 12, 2019

Martin Reidinger
United States District Judge